Jeff D. Friedman (173886)
HAGENS BERMAN SOBOL SHAPIRO LLP
715 Hearst Avenue, Suite 202
Berkeley, CA 94710
Telephone: (510) 725-3000
Facsimile: (510) 725-3001
jefff@hbsslaw.com

STEVE W. BERMAN (*pro hac vice pending*)
HAGENS BERMAN SOBOL SHAPIRO LLP
1918 Eighth Avenue, Suite 3300
Seattle, WA 98101
Telephone: (206) 623-7292
Facsimile: (206) 623-0594
steve@hbsslaw.com

ANTHONY L. ABNER (SBN 152052)
ABNER & FULLERTON LLP
32565 Golden Lantern Blvd., Suite 216
Dana Point, California 92945
Telephone: (323) 839-3291
Facsimile: (323) 656-7155
tonyabner@gmail.com

*Attorneys for Plaintiffs*

(*Additional counsel listed on signature page*)

# UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

### OAKLAND DIVISION

| | |
|---|---|
| ARTHUR SHERIDAN, an individual, and BARBARA SHERIDAN, an individual, individually and on behalf of all others similarly situated, <br><br> Plaintiffs, <br><br> v. <br><br> SIRIUS XM RADIO, INC., a Delaware corporation; and PANDORA MEDIA, INC., a Delaware corporation. <br><br> Defendants. | No. 4:15-cv-04081 <br><br> **CLASS ACTION COMPLAINT** <br><br> **JURY TRIAL DEMANDED** |

# TABLE OF CONTENTS

**Page**

I.    INTRODUCTION ...................................................................................1

II.   JURISDICTION AND VENUE .............................................................2

III.  PARTIES ...............................................................................................3

IV.   FACTUAL BACKGROUND .................................................................4

  A.    Arthur and Barbara Sheridan ......................................................4

  B.    Defendants Exploit Plaintiffs' and Class Members' Rights Without Permission or Compensation ...............................5

    1.    State Law Protection for Pre-1972 Recordings ................5

    2.    Sirius XM ...........................................................................6

    3.    Pandora Internet Radio ......................................................8

V.    CLASS ACTION ALLEGATIONS .....................................................10

  A.    Misappropriation Class Allegations ..........................................10

  B.    Publicity Rights Class Allegations ............................................11

  C.    Allegations Pertaining to Both Classes .....................................12

COUNT I (VIOLATION OF CAL. CIV. CODE § 980(A)(2),  COMMON LAW MISAPPROPRIATION, COMMON-LAW UNFAIR COMPETITION) .........................13

COUNT II (CONVERSION) ...........................................................................14

COUNT III (VIOLATION OF RIGHTS OF PUBLICITY UNDER CAL. CIV. CODE §§ 3344 AND 3344.1) .....................................15

COUNT IV (VIOLATION OF RIGHTS OF PUBLICITY UNDER CALIFORNIA COMMON LAW) .....................................16

COUNT V (UNFAIR COMPETITION UNDER CAL. BUS. & PROF. CODE § 17200 *ET SEQ.*) ...................................16

COUNT VI (UNJUST ENRICHMENT) ..........................................................18

MISAPPROPRIATION PRAYER FOR RELIEF .............................................19

RIGHT OF PUBLICITY PRAYER FOR RELIEF ...........................................19

DEMAND FOR JURY TRIAL .........................................................................20

# I.     INTRODUCTION[1]

1.      Every satellite and internet radio service must ensure that its broadcasts of copyrighted sound recordings are authorized and must arrange to pay royalties before it publicly performs the sound recordings.  Every satellite and internet radio service must also arrange to pay royalties to the owner of a sound recording each time the service reproduces the sound recording for purposes of archiving it, maintaining it, and streaming it online. If the radio service fails to arrange and pay required royalties, the use is unauthorized and infringes the sound recording's copyright. Further, the use of the names, voices, and likenesses of recording artists to promote illegal, unauthorized, and uncompensated broadcasts of sound recordings violates the recording owner's right to exploit those publicity rights. Although federal copyright law provides an automatic license and royalty rate for digital public performances of sound recordings created on or after February 15, 1972, no such automatic license exists for recordings created before that date. Instead, state law prohibits the unauthorized reproduction and performance of pre-1972 sound recordings.

2.      Arthur Sheridan and Barbara Sheridan (collectively, "Plaintiffs") are suing Sirius XM Radio, Inc. ("Sirius") and Pandora Media, Inc. ("Pandora") (collectively, "Defendants") for their unauthorized and unlawful use of sound recordings initially created before February 15, 1972 (the "Pre-1972 Recordings" or the "Recordings"), and the unauthorized exploitation of publicity rights held by or licensed to Plaintiffs in connection therewith.

3.      Defendants have violated and continue to violate Plaintiffs' rights under California law through the marketing, sale, and provision of satellite and internet radio services that include Pre-1972 Recordings. This practice unjustly enriches Defendants at the expense of Plaintiffs and class members.

4.      Defendants must pay royalties for the use of sound recordings created *on or after* February 15, 1972, which are copyrighted under the Copyright Act of 1976 (the "Copyright Act" or the "Act"). The Act does not, however, extend federal copyright to sound recordings created *before*

---

[1] Plaintiffs, by and through their attorneys, based on their individual experiences, make these allegations based on the investigation of counsel, and upon information and belief.

CLASS ACTION COMPLAINT - 1
No.: 4:15-cv-04081
010535-11  805945 V1

1  February 15, 1972, but specifically provides that states remain free to create remedies for

2  unauthorized use of those Pre-1972 Recordings.

3      5.      Despite their widespread public performance and reproduction of Pre-1972

4  Recordings protected by state law, Defendants have failed to obtain authorization and pay royalties.

5  Nor do Defendants pay for the publicity rights associated with the use of artists' names, voices, and

6  likenesses in the marketing and provision of their satellite and internet radio services.

7      6.      Pre-1972 sound recordings and the public images of the artists behind those

8  recordings redefined popular music in America. Defendants have earned substantial revenue by

9  creating, marketing, and selling subscriptions and advertisements in connection with radio services

10  featuring Pre-1972 Recordings owned by Plaintiffs. But despite the fact that Defendants profit

11  handsomely by advertising and offering these sound recordings to the public, they unlawfully fail to

12  arrange for permission to use (for compensation or otherwise) the sound recordings—or to pay for

13  the use of the names, voices, and likenesses of the sound recording artists. Defendants have traded on

14  the rights of Plaintiffs and class members to enhance the revenue and popularity of their radio

15  services.

16      7.      Defendants' conduct violates Plaintiffs' rights under California's statutory and

17  common law rights of publicity, as well as California statutory and common law prohibitions of

18  misappropriation, unfair competition, and conversion. Plaintiffs seek, on behalf of themselves and a

19  class of similarly situated rightholders, compensation from Defendants as well as injunctive relief for

20  violations of Plaintiffs' rights flowing from the unauthorized and uncompensated use of the Pre-1972

21  Recordings and publicity rights.

22          **II.      JURISDICTION AND VENUE**

23      8.      This Court has subject matter jurisdiction pursuant to the Class Action Fairness Act of

24  2005, 28 U.S.C. § 1322(d), because at least one class member is of diverse citizenship from

25  Defendants, there are more than 100 class members, and the aggregate amount in controversy

26  exceeds $5,000,000.

27      9.      The Court has personal jurisdiction over Plaintiffs because Plaintiffs submit to this

28  Court's jurisdiction. This Court has personal jurisdiction over Defendants because Defendants mass-

CLASS ACTION COMPLAINT - 2
No.: 4:15-cv-04081
010535-11  805945 V1

1   solicit California customers through their interactive websites www.pandora.com and

2   www.siriusxm.com and on-air advertising. Defendants' internet and satellite radio services are well

3   known and popular in the District. Defendants frequently violate California law to the detriment of

4   Plaintiffs, class members, and listeners, as detailed below, by publicly performing Pre-1972

5   Recordings in California without arranging or paying royalties. This court further has personal

6   jurisdiction over Defendant Pandora because Pandora has its principal place of business in

7   California.

8        10.     Venue is proper in this District under 28 U.S.C. § 1391(a) because a substantial part

9   of the events or omissions giving rise to the claims occurred and/or emanated from this District and

10  Defendants have caused harm to class members residing in this District.

11                              ### III.     PARTIES

12       11.     Plaintiff Arthur Sheridan is a citizen of Illinois and record producer who owns the

13  intellectual property and contract rights in numerous pre-1972 master recordings. Arthur Sheridan

14  possesses licenses to use the publicity rights of recording artists to promote the Pre-1972 Recordings

15  that he owns.

16       12.     Plaintiff Barabara Sheridan is a citizen of Illinois and owns the intellectual property

17  and contract rights in a pre-1972 master recording. Barbara Sheridan possesses a license to use the

18  publicity rights of recording artists to promote the Pre-1972 Recording that she owns.

19       13.     Defendant Pandora Media, Inc., is a Delaware corporation with its principal place of

20  business in Oakland, California. Pandora Media, Inc. owns and operates an internet radio service as

21  alleged throughout this Complaint.

22       14.     Defendant SiriusXM Radio Inc. is a Delaware corporation with its principal place of

23  business in New York, New York. SiriusXM Radio Inc. owns and operates satellite and internet

24  radio services as alleged throughout this Complaint.

25       15.     With respect to the right of publicity and related claims, Plaintiffs bring this action

26  individually and on behalf of the Publicity Rights Class as defined below.

27       16.     With respect to the state law misappropriation and related claims, Plaintiffs bring this

28  action individually and on behalf of the Misappropriation Class as defined below.

CLASS ACTION COMPLAINT - 3
No.: 4:15-cv-04081
010535-11 805945 V1

# IV.     FACTUAL BACKGROUND

**A.      Arthur and Barbara Sheridan**

17.     In the 1950s and 1960s, Arthur Sheridan owned and operated several recording companies specializing in recording and selling doo-wop, jazz, and rhythm and blues music. These music labels produced recordings by some of the most influential musicians of the era, including the Flamingos (inducted to the Rock and Roll Hall of Fame in 2001), Little Walter (inducted to the Blues Hall of Fame in 1986 and the Rock and Roll Hall of Fame in 2008), and the Moonglows (inducted to the Vocal Group Hall of Fame in 1999 and the Rock and Roll Hall of Fame in 2000).

18.     Arthur Sheridan owns many pre-1972 master recordings, including but not limited to the following fixtures of jazz, blues, and doo-wop music: "Slow Down Woman," "The Mojo," "I Want my Baby," and "How Can I Leave" by J.B. Lenoir; "That's my Desire" and "You Ain't Ready" by The Flamingos; "Evening Sun" by Johnny Shines; "Love is a Pain," "No Need of Your Crying," "I Had a Feeling," and "Meet Me Baby" by Rudy Greene; "Nervous Wreck" and "No More Love" by Willie Nix; "Just a Lonely Christmas," "Whistle My Love," "Baby Please," and "Hey Santa Claus" by The Moonglows; "She Is Going to Ruin Me" and "I Can't Stand Being Away From You" by T-Bone Walker; "I Just Keep Loving Her" by Little Walter; "Merry Lee," "Down Home," "Sweet and Lovely," and "The Talk of the Town" by Howard McGhee; and "High and Lonesome" and "Roll and Rhumba" by Jimmy Reed.

19.     Barbara Sheridan owns the pre-1972 master sound recording of "Golden Teardrops" by The Flamingos, critically acclaimed when it was recorded and still regarded as a classic.

20.     Arthur and Barbara Sheridan own the intellectual property and contract rights associated with the recordings. These rights include, without limitation, the right to control the use and distribution of the recording, the right to use the publicity rights, including the well-known voices, names, images, and likenesses of the associated recording artists such as the Flamingos and Little Walter, to promote the recordings, and the right to receive royalty payments from the exploitation of the master recordings described above. The publicity rights of the recording artists behind the recordings are valuable and highly sought-after by commercial entities.

21.     Arthur and Barbara Sheridan continue to market the Pre-1972 Recordings that they own. In particular, Arthur and Barbara Sheridan continue to receive revenue from licenses granted to third parties to publicly perform the recordings.

**B.      Defendants Exploit Plaintiffs' and Class Members' Rights Without Permission or Compensation**

**1.      State Law Protection for Pre-1972 Recordings**

22.     The Copyright Act creates a federal statutory licensing scheme pursuant to which satellite and internet radio companies such as Defendants are required to pay royalties for the public performance of sound recordings protected by the Act. *See* 17 U.S.C. §§ 112(e), 114(d)(2), 114(f). The companies pay these royalties to SoundExchange, a nonprofit entity established by regulation for the collection and distribution of royalty payments under this scheme.

23.     The statutory licensing scheme provided by 17 U.S.C. §§ 112(e), 114(d)(2), and 114(f) does not extend to Pre-1972 Recordings. Thus, SoundExchange's authority does not extend to the collection and distribution of royalty payments to the owners of copyrights in Pre-1972 Recordings. *See* 17 U.S.C. § 114(g)(2) (requiring SoundExchange to distribute royalties to holders of federal copyrights). The existence of SoundExchange does not alter the issues presented in this action because SoundExchange has no authority to negotiate or collect royalties on behalf of copyright holders for the reproduction and public performance of Pre-1972 Recordings.

24.     The Copyright Act specifically provides that Pre-1972 Recordings will not be subject to federal copyright. 17 U.S.C. § 301(c). But nothing in the Copyright Act permits entities such as Defendants to make use of Pre-1972 Recordings without compensation, or to exploit the names, voices, or likenesses of persons connected with Pre-1972 Recordings without authorization in order to market, sell advertising on, and provide satellite and internet radio services. Indeed, the Copyright Act specifically left states free to regulate the use of works of authorship that it chose not to render subject to federal law. 17 U.S.C. § 301(b)(1).

25.     California statutory and common law protects Pre-1972 Recordings from being copied, distributed, or otherwise exploited without license or authorization. In particular, California Civil Code § 980(a)(2) provides as follows:

CLASS ACTION COMPLAINT - 5
No.: 4:15-cv-04081
010535-11  805945 V1

The author of an original work of authorship consisting of a sound recording initially fixed prior to February 15, 1972, has an exclusive ownership therein until February 15, 2047, as against all persons except one who independently makes or duplicates another sound recording that does not directly or indirectly recapture the actual sounds fixed in such prior sound recording, but consists entirely of an independent fixation of other sounds, even though such sounds imitate or simulate the sounds contained in the prior sound recording.

26.     Accordingly, California Civil Code § 980(a)(2) controls the right to perform Plaintiffs' pre-1972 master recordings.

**2.     Sirius XM**

27.     Sirius offers satellite and internet music services consisting of almost 1000 different "channels" distinguished by type of content and ranging across music, sports, and news.

28.     Sirius is a highly profitable company that derives substantial revenue from the intellectual property and publicity rights embodied in the music it plays and in its marketing of that music.

29.     A substantial number of Sirius channels are devoted exclusively to music, with many of these music channels featuring Pre-1972 Recordings. Indeed, Sirius channels 3 through 9 currently feature decade-specific music playlists featuring *only* Pre-1972 Recordings, including "'40s on 4," "'50s on 5," and "'60s on 6."

30.     Sirius advertises its services using the names of numerous popular artists associated with each channel, including, on information and belief, names belonging to many Class Members.

31.     Users purchase access to Sirius channels in the form of various subscription packages, which allow access to Sirius channels using either a satellite radio receiver or an internet device such as a computer, digital media device, tablet, or smartphone. Sirius's services also permit users to download and replay tracks that have been performed on a particular channel, download particular sound recordings, access and replay specific portions of sound recordings, and download specific sound recordings as part of an "On Demand" feature.

32.     Sirius's music services are delivered by way of satellite and web interfaces which promote Sirius's services or are designed to attract users and subscribers to Sirius's services.

33. Sirius regularly broadcasts to listeners the "Golden Teardrops" recording and other recordings listed above, as well as many other Pre-1972 Recordings, and has done so repeatedly for the last several years.

34. Sirius has not licensed Pre-1972 Recordings from their copyright owners.

35. The Pre-1972 Recordings played by Sirius exploit Plaintiffs' and class members' rights of publicity in the voices of the artists featured in those Recordings.

36. In addition to the voices of artists featured in Pre-1972 Recordings, Sirius displays on its website the names and likenesses of artists featured in Pre-1972 Recordings. Pre-1972 Recording artist names and likenesses appear on web interfaces which promote Sirius's services or are designed to attract users and subscribers to Sirius's services. Sirius also displays Pre-1972 Recording artist names in the provision of its satellite music services.

37. In the course of broadcasting satellite and internet radio services that feature Pre-1972 Recordings, Sirius reproduces those Recordings multiple times for purposes of archiving, advertising, buffering, streaming, and otherwise maintaining, accessing, and performing the Recordings.

38. Generally, Sirius's subscription packages require users to pay monthly fees—currently, $14.99 or $19.99 per month—which generate significant revenues for Sirius.

39. Sirius advertises that its music services, both satellite and internet, can be accessed throughout the United States, including California. As of the end of 2014, Sirius reports having over 27.3 million subscribers, millions of whom, on information and belief, are located in California.

40. In the context of rate-setting proceedings for the statutory licensing scheme associated with federal copyrights, Sirius has sought to justify an exclusion of revenue that it attributed to Pre-1972 Recordings in its calculation of statutory royalty payments to SoundExchange.

41. But Sirius also has not separately licensed Pre-1972 Recordings from Plaintiffs or other Class Members who own the rights to reproduce, distribute, publicly perform, and otherwise exploit the Recordings. Nor has Sirius separately licensed the right, for Pre-1972 Recordings, to use musicians' names, voices, or likenesses in the provision and marketing of its services.

CLASS ACTION COMPLAINT - 7
No.: 4:15-cv-04081
010535-11 805945 V1

42.     Thus, without obtaining authorization or rendering compensation, Sirius has reproduced and publicly performed Pre-1972 Recordings created and/or owned by Plaintiffs and other Class Members, deriving significant benefits—including millions of dollars in annual revenue— from its unlawful use of their recordings and publicity rights.

### 3.     Pandora Internet Radio

43.     Pandora offers internet radio services in the form of customizable music "stations" that stream music to users on the internet. Many Pandora stations feature, in whole or in part, Pre-1972 Recordings.

44.     Pandora offers its services to the public on both a subscription and non-subscription basis. Users without a subscription hear advertisements at periodic intervals between tracks, and may skip only six tracks per station per hour (and twelve tracks total per day) across all stations. Users with a subscription are promised "ad-free listening" and may skip a greater number of tracks per day. Users can access Pandora on a variety of internet platforms including computers, digital media devices, tablets, and smartphones.

45.     Pandora's internet music service is delivered by way of web interfaces which promote Pandora's services or are designed to attract users and subscribers to Pandora's services.

46.     Pandora regularly broadcasts to listeners the "Golden Teardrops" recording and other recordings listed above, as well as many other Pre-1972 Recordings, and has done so repeatedly for the last several years.

47.     Pandora has not licensed Pre-1972 Recordings from their copyright owners.

48.     The Pre-1972 Recordings played by Pandora exploit Plaintiffs' and class members' rights of publicity in the voices of the artists featured in those Recordings.

49.     In addition to the voices of artists featured in Pre-1972 Recordings, Pandora displays on its website the names and likenesses of artists featured in Pre-1972 Recordings.  Pre-1972 Recording artist names and likenesses appear on web interfaces which promote Pandora's services or are designed to attract users and subscribers to Pandora's services.

CLASS ACTION COMPLAINT - 8
No.: 4:15-cv-04081
010535-11  805945 V1

50. Pandora offers users a choice between monthly and yearly subscriptions. In either case, subscribers pay a periodic fee for the use of Pandora's service. Pandora currently offers paid subscriptions at $54.89 per year, or $4.99 per month.

51. Pandora also sells the right to advertise to users on its stations, websites, and applications.

52. Pandora's internet radio service can be accessed throughout the United States, including California. As of 2015, Pandora reports having over 250 million registered users of its internet music service. Pandora further reports over 3.3 million paying subscribers. Upon information and belief, millions of Pandora users and hundreds of thousands of paying Pandora subscribers are located in California.

53. Sales of subscriptions and advertisements generate millions of dollars of revenue for Pandora each year.

54. In the course of broadcasting internet radio services that feature Pre-1972 Recordings, Pandora reproduces those Recordings multiple times for purposes of archiving, advertising, buffering, streaming, and otherwise maintaining, accessing, and performing the Recordings.

55. But despite the fact that Pandora's service includes Pre-1972 Recordings, and despite the fact that Plaintiffs and other Class Members own the rights to reproduce, distribute, publicly perform, and otherwise exploit the Recordings—Pandora has not paid for a license to use the Recordings. Nor is Pandora licensed, for Pre-1972 Recordings, to use musicians' names, voices, or likenesses in the provision and marketing of its services.

56. Thus, without obtaining authorization or rendering compensation, Pandora has reproduced and publicly performed Pre-1972 Recordings created and/or owned by Plaintiffs and other Class Members, deriving significant benefits—including millions of dollars in annual revenue— from its unlawful use of Plaintiffs' and Class Members' sound recordings and publicity rights.

# V.    CLASS ACTION ALLEGATIONS

## A.    Misappropriation Class Allegations

57.    Plaintiffs Arthur and Barbara Sheridan bring this action under Federal Rule of Civil Procedure 23(b)(2) and (b)(3) on their own behalf and on behalf of the following class of plaintiffs (the "Misappropriation Class"):

> All owners of reproduction and public performance rights in Pre-1972 Recordings that have been publicly performed, copied, or otherwise exploited by Defendants, without a license or other authorization, in the marketing, sale, and provision of satellite and internet radio services.

58.    The persons in the Misappropriation Class are so numerous that individual joinder of all members is impracticable under the circumstances of this case. Although the precise number of such persons is unknown, the exact size of the Misappropriation Class is easily ascertainable, as each class member can by identified by using Defendants' records. Plaintiffs are informed and believe that there are many thousands of Misappropriation Class members.

59.    There are common questions of law and fact specific to the Misappropriation Class that predominate over any questions affecting individual members, including:

(a)    Whether Defendants copy, publicly perform, or otherwise exploit Pre-1972 Recordings in their satellite and internet radio services without authorization or permission;

(b)    Whether such uses are unlawful;

(c)    Whether Defendants' conduct violates California Civil Code § 980(a)(2);

(d)    Whether Defendants' conduct constitutes misappropriation;

(e)    Whether Defendants' conduct constitutes unfair competition;

(f)    Whether Defendants' conduct constitutes conversion;

(g)    Whether class members have been damaged by Defendants' conduct, and the amount of such damages;

(h)    Whether treble damages are appropriate and the amount of such damages;

(i)    Whether punitive damages are appropriate and the amount of such damages;

(j)    Whether statutory damages are appropriate and the amount of such damages;

(k)     Whether an order enjoining future unauthorized use of Pre-1972 Recordings in satellite and internet radio services is appropriate and on what terms;

(l)     Whether Defendants have been unjustly enriched; and

(m)     Whether Defendants should disgorge their unlawful profits, and the amount of such profits.

60.     Plaintiffs' claims are typical of the Misappropriation Class's claims, as they arise out of the same course of conduct and the same legal theories as the rest of the Misappropriation Class, and Plaintiffs challenge the practices and course of conduct engaged in by Defendants with respect to the Misappropriation Class as a whole.

**B.     Publicity Rights Class Allegations**

61.     Plaintiffs bring this action pursuant to Federal Rules of Civil Procedure 23(b)(2) and (b)(3) on their own and on behalf of the following class of plaintiffs (the "Publicity Rights Class"):

> All owners of rights of publicity—including, without limitation, the rights to control, license, limit, or otherwise exploit the use of the name, voice, photograph, or likeness—of any person, living or dead, who performed in Pre-1972 Recordings that were used by Defendants, and whose rights of publicity were used by Defendants without a license or other authorization, in the marketing, sale, and provision of satellite and internet radio services.

62.     The persons in the Publicity Rights Class are so numerous that individual joinder of all members is impracticable under the circumstances of this case. Although the precise number of such persons is unknown, the exact size of the Publicity Rights Class is easily ascertainable, as each class member can be identified by using Defendants' records. Plaintiffs are informed and believe that there are many thousands of Publicity Rights Class members.

63.     There are common questions of law and fact specific to the Publicity Rights Class that predominate over any questions affecting individual members, including:

(a)     Whether Defendants utilize the names, voices, photographs, or likenesses of any person performing in a Pre-1972 Recording;

(b)     Whether such uses are unlawful;

(c)     Whether Defendants' conduct violates California Civil Code §§ 3344 and 3344.1;

(d)     Whether Defendants' conduct constitutes unfair competition;

(e)     Whether class members have been damaged by Defendants' conduct and the amount of such damages;

(f)     Whether treble damages are appropriate and the amount of such damages;

(g)     Whether punitive damages are appropriate and the amount of such damages;

(h)     Whether statutory damages are appropriate and the amount of such damages;

(i)     Whether an order enjoining future violations of publicity rights is appropriate and on what terms;

(j)     Whether Defendants have been unjustly enriched; and

(k)     Whether Defendants should disgorge their unlawful profits and the amount of such profits.

64.     Plaintiffs' claims are typical of the Publicity Rights Class's claims, as they arise out of the same course of conduct and the same legal theories as the rest of the Publicity Rights Class, and Publicity Rights Plaintiffs challenge the practices and course of conduct engaged in by Defendants with respect to the Class as a whole.

**C.     Allegations Pertaining to Both Classes**

65.     Excluded from both classes are Defendants, their employees, co-conspirators, officers, directors, legal representatives, heirs, successors, and wholly or partly owned subsidiaries or affiliated companies; class counsel and their employees; and the judicial officers and associated court staff assigned to this case.

66.     Plaintiffs will fairly and adequately protect the interests of both classes. They will vigorously pursue the claims and have no antagonistic conflicts. Plaintiffs have retained counsel who are able and experienced class action litigators and are familiar with representing plaintiffs in large-scale copyright, trademark, and right of publicity claims.

67.     Defendants have acted or refused to act on grounds that apply generally to both classes, and final injunctive relief or corresponding declaratory relief is appropriate respecting the class as a whole. A class action is also appropriate because Defendants have acted and refused to take steps that are, upon information and belief, generally applicable to thousands of individuals, thereby making injunctive relief appropriate with respect to both classes as a whole.

68.     Questions of law or fact common to class members predominate over any questions affecting only individual members. Resolution of this action on a class-wide basis is superior to other available methods and is a fair and efficient adjudication of the controversy because in the context of this litigation no individual class member can justify the commitment of the large financial resources to vigorously prosecute a lawsuit against Defendants. Separate actions by individual class members would also create a risk of inconsistent or varying judgments, which could establish incompatible standards of conduct for Defendants and substantially impede or impair the ability of class members to pursue their claims. It is not anticipated that there would be difficulties in managing this case as a class action.

69.     Plaintiffs reserve the right to amend all class allegations as appropriate, and to request any state law subclasses or other subclasses if necessary, upon completion of class-related discovery and motions for class certification.

**COUNT I**
**(VIOLATION OF CAL. CIV. CODE § 980(A)(2),**
**COMMON LAW MISAPPROPRIATION, COMMON-LAW UNFAIR COMPETITION)**

70.     Plaintiffs incorporate by reference the allegations in the above paragraphs as if fully set forth herein.

71.     Plaintiffs, the Misappropriation Class, and/or their predecessors-in-interest spent substantial time, skill, effort, and money to create the Pre-1972 Recordings, and Plaintiffs and the Misappropriation Class have property interests in them as recognized by Cal. Civ. Code § 980(a)(2) and California common law.

72.     By duplicating the Pre-1972 Recordings without authorization from Plaintiffs and Class Members, and publicly performing those Recordings to their users for their own gain, Defendants engaged in the misappropriation of the Plaintiffs' and Class Members' valuable work product and/or intellectual property rights, whereby Defendants profited to the disadvantage of the Plaintiffs and Class Members, who have been and continue to be injured by Defendants' conduct.

73.     As a result of Defendants' misappropriation of the Pre-1972 Recordings, Plaintiffs and Class Members are entitled to an order enjoining Defendants from continuing to use those recordings without authorization and compensation, and to an order imposing a constructive trust on

CLASS ACTION COMPLAINT - 13
No.: 4:15-cv-04081
010535-11  805945 V1

any money acquired by means of Defendants' misappropriation, including all gross receipts attributable to Defendants' misappropriation of the Pre-1972 Recordings.

74.     Defendants' conduct, as described above, constituted a continuous and intentional pattern of misappropriation of Plaintiffs' and Class Members' property, justifying the imposition of punitive damages. Defendants are high-profile, large-scale media companies that are intimately familiar with the mechanics of the music industry and the requirements of intellectual property law. By knowingly misappropriating works without their owners' permission and performing these works to millions of users of satellite and internet radio services, Defendants acted and continue to act despicably and to demonstrate a conscious intent to injure Plaintiffs and Class Members by depriving them of compensation for the use of the Pre-1972 Recordings. Defendants' continued misappropriation of the Pre-1972 Recordings was in conscious and willful disregard of Plaintiffs' and Class Members' ownership rights in those Recordings.

## COUNT II
### (CONVERSION)

75.     Plaintiffs incorporate by reference the allegations in the above paragraphs as if fully set forth herein.

76.     Plaintiffs and the Misappropriation Class are the owners of the Pre-1972 Recordings, and have an intangible property interest in them as recognized by California Civil Code § 980(a)(2).

77.     By their conduct described above, Defendants wrongfully converted those rights and interests for their own use and profit.

78.     By their conduct described above, Defendants engaged in a wrongful, unpermitted exercise of control over the property of Plaintiffs and Class Members. As a result, Plaintiffs and Class Members lost control over their rightful property and did not receive compensation for the use of their valuable sound recordings, and were thereby damaged.

79.     As a result of Defendants' conversion of the Pre-1972 Recordings, Plaintiffs and Class Members are entitled to an order enjoining Defendants from continuing to use those recordings without authorization and compensation, and to an order imposing a constructive trust on any money

acquired by means of Defendants' conversion, including all gross receipts attributable to Defendants' conversion of the Pre-1972 Recordings.

80.     Defendants are high-profile, large-scale media companies, intimately familiar with the mechanics of the music industry and the requirements of intellectual property law. By knowingly converting works without their owners' permission and publicly performing these works to millions of users of satellite and internet radio services, Defendants acted and continue to act despicably and to demonstrate an intent to injure Plaintiffs and Class Members by depriving them of compensation for the use of the Pre-1972 Recordings. Defendants' conversion of the Pre-1972 Recordings was in conscious and willful disregard of the Plaintiffs' and Class Members' ownership rights in those Recordings.

**COUNT III**
**(VIOLATION OF RIGHTS OF PUBLICITY UNDER CAL. CIV. CODE §§ 3344 AND 3344.1)**

81.     Plaintiffs incorporate by reference the allegations in the above paragraphs as if fully set forth herein.

82.     Defendants have knowingly and intentionally used and continue to use the publicity rights of Plaintiffs and the Publicity Rights Class, including names, voices, and likenesses, for the purposes of advertising Defendants' satellite and internet radio services; providing those radio services; selling subscriptions and advertisements in connection with those radio services; and/or advertising and selling other products and services.

83.     Defendants are high-profile, large-scale media companies, intimately familiar with the mechanics of the music industry and the law governing rights of publicity. Defendants' actions, as described herein, were committed maliciously, intentionally, fraudulently and with a willful and conscious disregard of the rights of Plaintiffs and the Publicity Rights Class, making an award of punitive damages appropriate in order to punish and deter Defendants from continuing to engage in the conduct alleged herein.

84.     As a result of Defendants' violation of their publicity rights, Plaintiffs and the Publicity Rights Class have been injured.

CLASS ACTION COMPLAINT - 15
No.: 4:15-cv-04081
010535-11  805945 V1

## COUNT IV
### (VIOLATION OF RIGHTS OF PUBLICITY UNDER CALIFORNIA COMMON LAW)

85.    Plaintiffs incorporate by reference the allegations in the above paragraphs as if fully set forth herein.

86.    Defendants have utilized and continue to utilize names, voices, and/or likenesses of recording artists associated with the Pre-1972 Recordings in Defendants' satellite and internet radio services.

87.    Defendants have intentionally used and continue to use names, voices, and likenesses of recording artists associated with the Pre-1972 Recordings with full and complete knowledge that their use of such rights was unauthorized and without prior license or consent.

88.    Defendants have used and continue to use names, voices, and likenesses of recording artists associated with the Pre-1972 Recordings for their own commercial advantage as a means of generating interest in and profits for Defendants' satellite and internet radio services.

89.    Plaintiffs hold licenses to promote the Pre-1972 Recordings using the names, voices, and/or likenesses of recording artists associated with the Pre-1972 Recordings.

90.    Defendants' actions, as described herein, were committed maliciously, intentionally, fraudulently, and with a willful and conscious disregard of Plaintiffs' and the Publicity Rights Class's rights, making an award of punitive damages appropriate in order to punish and deter Defendants from engaging in the conduct alleged herein.

91.    As a result of Defendants' misappropriation of valuable publicity rights, Plaintiffs and the Publicity Rights Class have been injured.

## COUNT V
### (UNFAIR COMPETITION UNDER CAL. BUS. & PROF. CODE § 17200 *ET SEQ.*)

92.    Plaintiffs incorporate by reference the allegations in the above paragraphs as if fully set forth herein.

93.    Defendants' conduct, as alleged above, constituted and constitutes an unlawful and unfair business practice in violation of Section 17200, *et seq.*, of the California Business and Professions Code.

CLASS ACTION COMPLAINT - 16
No.: 4:15-cv-04081
010535-11  805945 V1

94. The conduct is unlawful because, among other things, it violates California Civil Code §§ 980(a)(2) as well as §§ 3344 and 3344.1.

95. Defendant's business practices are unfair because they offend established public policy tethered to specific statutory provisions, as set forth above, and are immoral, unethical, oppressive, unscrupulous and/or substantially injurious to consumers, which harm greatly outweighs any benefit associated with the business practice.

96. Defendants' misappropriation of the Pre-1972 Recordings is immoral, unethical, unscrupulous, and offensive to California's established public policy of protecting the owners of sound recordings not covered under federal copyright from unauthorized use of those sound recordings. Defendants' misappropriation of rights of publicity in violation of Plaintiffs' rights is likewise immoral, unethical, unscrupulous, and offensive to California's established public policy of protecting the right of individuals to control the commercial use and exploitation of their names, voices, photographs, and likenesses. Defendants' conduct has little or no social utility, but serves only to enrich Defendants at the expense of grave harm to Plaintiffs and Class Members. Defendants' unlawful conduct further misleads the public as to the legality of the services Defendants provide and gives Defendants an unfair competitive advantage in the market for satellite and internet radio services and advertising.

97. Defendants' misappropriation of the Pre-1972 Recordings and violation of Plaintiffs' rights to use the publicity rights of recording artists associated with the Pre-1972 Recordings has caused Plaintiffs and Class Members substantial injury, including without limitation foregone licensing opportunities and royalty payments, that could not have been avoided by Plaintiffs and Class Members, and that is not outweighed by any benefit to consumers or competition.

98. Defendants' misappropriation of the Pre-1972 Recordings and violation of Plaintiffs' rights to use the publicity rights of recording artists associated with the Pre-1972 Recordings has further caused and is causing irreparable injury to Plaintiffs and Class Members. Plaintiffs and Class Members are therefore entitled to an order enjoining Defendants from continuing to use the Recordings without authorization and compensation, and to an order requiring Defendants to make restitution of and disgorge any money acquired by means of Defendants' conduct, including all gross

receipts attributable to Defendants' misappropriation of the Pre-1972 Recordings and rights of publicity held by Plaintiffs and Class Members. Plaintiffs and Class Members are further entitled to an award of attorneys' fees pursuant to California Code of Civil Procedure § 1021.5.

**COUNT VI**
**(UNJUST ENRICHMENT)**

99.    Plaintiffs incorporate by reference the allegations in the above paragraphs as if fully set forth herein.

100.    To the detriment of Plaintiffs and the Class, Defendants have been and continue to be unjustly enriched as a result of the unlawful and/or wrongful conduct alleged herein. Defendants have unjustly benefitted through the sale of subscriptions and advertisements in connection with their satellite and internet radio services that use without authorization the Pre-1972 Recordings and the publicity rights contained therein, and have also used such publicity rights in the advertising and marketing of those services—leveraging for profit the hard-earned fame and reputation of Plaintiffs and the Class.  Defendants have therefore benefitted from the use of Pre-1972 Recordings, as well as the name, voice, and likeness rights of Plaintiffs and the Publicity Rights Class.

101.    The publicity rights of Plaintiffs and the Publicity Rights Class also have considerable commercial value, deriving from Plaintiffs' and Class Members' stature and fame in American popular culture.

102.    Defendants have intentionally used and continue to use Pre-1972 Recordings owned by Plaintiffs and Misappropriation Class Members without license or authorization. Defendants have intentionally used and continue to use names, voices, and likenesses of recording artists associated with the Pre-1972 Recordings without Plaintiffs' or Class Members' consent.

103.    It would be unjust for Defendants to retain the benefits attained by their unlicensed and wrongful use of the Plaintiffs' Recordings and violations of Plaintiffs' rights to use the publicity rights of recording artists associated with the Pre-1972 Recordings. Accordingly, Plaintiffs seek, on behalf of themselves and the Publicity Rights Class, full restitution of Defendants' enrichment, benefits, and ill-gotten gains acquired as a result of the unlawful and/or wrongful conduct alleged herein.

## MISAPPROPRIATION PRAYER FOR RELIEF

104.    WHEREFORE, on their own behalf and on behalf of the Misappropriation Class, Plaintiffs pray for judgment against Defendants as follows:

(a)    Certification of the action as a Class Action pursuant to the Federal Rules of Civil Procedure, and appointment of Plaintiffs as the Class Representatives and their counsel of record as Class Counsel;

(b)    Actual damages, statutory damages, punitive damages, and such other relief as provided by the statutes and common law cited herein;

(c)    Disgorgement of all profits earned by Defendants from copying, publicly performing, and otherwise exploiting Pre-1972 Recordings in satellite and internet radio services;

(d)    A constructive trust on any money acquired by means of Defendants' conversion, including all gross receipts attributable to Defendants' conversion of the Pre-1972 Recordings;

(e)    Prejudgment and post-judgment interest on any monetary relief;

(f)    Equitable relief enjoining future unauthorized use of Pre-1972 Recordings in satellite and internet radio services;

(g)    The costs of bringing this suit, including reasonable attorneys' fees; and

(h)    All other relief to which Plaintiffs and class members may be entitled at law or in equity.

## RIGHT OF PUBLICITY PRAYER FOR RELIEF

105.    WHEREFORE, on their own behalf and on behalf of the Publicity Rights Class, Plaintiffs pray for judgment against Defendants as follows:

A.    Certification of the action as a Class Action pursuant to the Federal Rules of Civil Procedure, and appointment of Plaintiffs as the Class Representatives and their counsel of record as Class Counsel;

B.    Actual damages, statutory damages, punitive damages, and such other relief as provided by the statutes and common law cited herein;

C.    Disgorgement of all profits earned by Defendants from the marketing, sale, and provision of satellite and internet radio services using names, voices, photographs, and likenesses of recording artists associated with the Pre-1972 Recordings;

D.      A constructive trust on any money acquired by means of Defendants' violation of Plaintiffs' rights to use publicity rights, including all gross receipts attributable to Defendants' performance of the Pre-1972 Recordings;

E.      Prejudgment and post-judgment interest on such monetary relief;

F.      Equitable relief in enjoining future violations of publicity rights associated with the Pre-1972 Recordings in Defendants' satellite and internet radio services;

G.      The costs of bringing this suit, including reasonable attorneys' fees; and

H.      All other relief to which Plaintiffs and class members may be entitled at law or in equity.

## DEMAND FOR JURY TRIAL

Plaintiffs demand a trial by jury on all issues so triable.

DATED:  September 8, 2015

**HAGENS BERMAN SOBOL SHAPIRO LLP**

By:  /s/ Jeff D. Friedman
Jeff D. Friedman (173886)
**HAGENS BERMAN SOBOL SHAPIRO LLP**
715 Hearst Avenue, Suite 202
Berkeley, CA 94710
Telephone: (510) 725-3000
Facsimile: (510) 725-3001
jefff@hbsslaw.com


STEVE W. BERMAN (*pro hac vice* pending)
steve@hbsslaw.com
1918 Eighth Avenue, Suite 3300
Seattle, WA 98101
Telephone: (206) 623-7292
Facsimile: (206) 623-0594

ROBERT B. CAREY (*pro hac vice* pending)
rob@hbsslaw.com
JOHN M. DESTEFANO (*pro hac vice* pending)
johnd@hbsslaw.com
11 West Jefferson Street, Suite 1000
Phoenix, AZ 85003
Telephone: (602) 840-5900
Facsimile: (602) 840-3012

**ABNER & FULLERTON LLP**
ANTHONY L. ABNER (SBN 152052)
32565 Golden Lantern Blvd., Suite 216
Dana Point, California 92945
tonyabner@gmail.com
Telephone: (323) 839-3291
Facsimile: (323) 656-7155

**THE LAW OFFICE OF JUSTIN SOBODASH**
Justin Sobodash (SBN 217450)
Justin@Sobodashlaw.com
8335 West Sunset Blvd., Suite 302
West Hollywood, California 90069
Telephone: (323) 337-9010
Facsimile: (323) 656-7155